I'll now have the next case for argument. United States v. Christian Pepio. Ms. Cassidy, whenever you're ready. Good morning, Your Honors. I represent Christian Pepio, who appeals from the imposition of special conditions of supervised release requiring broad electronic monitoring of all data on all of his electronic devices without any reasonable suspicion. This condition is overly broad, not narrowly tailored as this court requires, and not justified by individual reasons. As this court has repeatedly held, such a sweeping condition which infringes fundamental liberty interests imposed with no specific reasons for it must be vacated. This court has held that in Lifshitz and Salazar. Pepio objected to this condition precisely on the ground that it was too broad and intrusive. He asked the court to limit probation's access to the data to when there was reasonable suspicion to believe Pepio had committed a crime or violated the conditions. The court refused and provided no reasons for such intrusive surveillance. The court stated only that the condition was sufficiently tailored and sufficiently protective of defendant's rights given the nature of the offense and the nature of the victims. Ms. Cassidy, can I just ask, the only condition that isn't subject to reasonable suspicion is the monitoring program. And didn't the probation department explain at the sentencing that that monitoring program is an electronic, the monitoring part of his account is an electronic program that just detects suspicious activity and that that would then just alert probation to trigger the reasonable suspicion part of the inquiry. So why is, and the other provisions in both 8 and 9, other than giving over the passwords in advance, is only triggered by reasonable suspicion. So why is the monitoring part of Condition 8 not consistent with Salazar, which permitted the, you know, and sort of automated program, which here probation said they use a keyword or they have a keyword triggering that identifies suspicious activity. Because there was no limitation at all. Actually, probation said the opposite. He said, I don't know if we have the capacity to do what you want. What the defense counsel asked for was precisely a triggering requirement. An independent monitor outside of the eyes of the probation office that would send up a red flag if contraband or something suspicious was found. That's what this court has approved of at Salazar and in Lipschitz. But that wasn't required in the condition and that was fought against by the government and the probation department. But in Salazar, I may know a thing or two about that one as I was on that panel. Very different. What we said, I thought, in Salazar was that often there are programs that are used that detect suspicious activity. Electronic programs precisely of the type that Judge Garrett just asked you about. And those, to me, it seems like your client is appealing because he didn't want probation to run that electronic program. He wanted some third party to run the program. There's no difference in the program, the electronic monitoring, just whether it's administered by a third party or whether it's administered by probation. That seems to be the issue here, at least as far as the program itself. Correct? That is not the issue, Your Honor. What should have happened, what defense counsel was asking for, was for the same limitation that was put in for geolocation monitoring to be put in for all the other data, which is that the monitoring hardware is authorized to capture and analyze all data processed by or contained on the device. No, I understand that it had the condition nine had the geolocation data and passwords had reasonable suspicion. I understand that. I'm talking about condition eight. I'm talking about the limitation that was put in that says the geolocation data collected by the monitoring software is to be accessed by probation only if reasonable suspicion exists. That should have said all the data. The data can only be accessed by the probation officer. As this stands and what defense counsel was objecting to and what the court refused to fix was that as condition eight stands, the monitoring software can be accessed by the probation officer for any time at any reason. The probation officer can sit there and simply access and open and peruse Pepeo's life at will. Well, didn't probation say that they would only dig deeper, if you will, or look further if something came up suspicious in the monitoring activity? In fact, there was a discussion on the record about that, right? They did not say that. They said, we do targeted reviews focus a lot on those keywords. That means the probation officer is sitting there looking at the monitoring. That's just taking his word for it that they targeted. But that's not any requirement that reasonable suspicion is required before he accesses that data. This is very different. This is the same. So you wanted that assurance that probation gave on the record. You wanted that in the condition itself. We wanted that in the condition that reasonable suspicion is required. Is that what you're saying? And that's exactly what happened in Salazar. In Salazar on remand, the condition that this court vacated was reinstated with the change that monitoring data is authorized to capture all data, but the probation officer shall be notified if potentially prohibited data is identified. The data collected by the monitoring software is to be accessed if reasonable suspicion exists. Well, I understand that's what happened in Salazar on remand. But a key distinction, or several, between this case and Salazar is that in this case there was evidence of concealment. And the court in this case explained the nexus, the reason for, and there's an apparent record. In Salazar there was no nexus, no explanation. It was convicted of child pornography, therefore this condition is imposed. Here there's a lot more than that. I mean, I know that there's the issue with the phone. I know that the briefing says, well, he didn't sell the phone when he should have, or when he should have handed it in. He didn't hand it in. He brought it in a day late. And then he sold another phone. And then when they searched, they eventually gathered that phone, they realized there was some software used on it that erased data. And there were two violations. I mean, I know you say they're minimal, but doesn't the court have the benefit of looking at his pretrial supervision and the violations that occurred, his having visitors without permission and all of that? There are several answers to that. Number one is the court did not give that as a reason. And the court did not even mention that. This violation, his failure to sell his phone right away, to trade it in and instead selling it to the Apple store, occurred two and a half years before the sentencing. This was a very old violation. For two and a half years he had been completely compliant. Because he was being monitored at all times. He was, and he was completely compliant. And the visitor turned out to be nothing. There was never a real violation alleged against him. He was not violated for that. Because that was somebody who came by and stood outside and didn't come into his house for a few hours. But the point is, because he sold the phone, they couldn't access his chats, his communications, and later found he was having communications about somebody visiting, albeit he claims the person didn't go into the apartment. I get that. But that's the whole point of supervision, is that you want to be sure they don't know, do they, if he accessed child porn sites on that phone. Because the data was erased. That's the whole point of supervision. So both of those episodes, even the visitor that turned out to be nothing, had occurred two and a half years before. He had been monitored heavily for two and a half years and had done nothing whatsoever. There was no indication anywhere, not from the probation department and not from the psychosexual report, that he presented any risk for reoffending. In fact, it was the opposite. And the court didn't refer to this. The government argued this violation, but the court never referred to it, not even in its sentencing. Nowhere in the record did the court pick up on that and say, oh, yes, that's an aggravating factor. And even if that had been, this court has, in Koonst and in Browder, where there was more in the record, this court affirmed the condition only with the third-party monitor or with the monitoring system, not allowing probation to access it unless there was sufficient. But didn't the court base it on his history, given the use of a computer in this case to commit the crime? No, it didn't. Not the condition. The court discussed some of the things that the government argued, like the fact that he had used software in the original offense, not after, in the original offense, to, you know, cover his tracks online. But that was in respect with the sentence. That was the court considered that only in determining the sentence. The only reasons the court gave for not imposing the restrictions that this court has required, even in Koonst and even in Browder, where they affirmed the condition, it was with access by the probation officer only upon reasonable suspicion. And the only reason the court gave for rejecting that, which this court has just routinely required, was that, well, this is a condition, this is, and given the victims and the kind of crime in the victims in this case, this is required to monitor him. And it's not the case, and this court has never held, and it's not reflected anywhere in the law that every CP violation gets open-ended monitoring by the probation officer himself into every single aspect. No, but you do agree, do you agree that we can look to the record in terms of establishing the nexus between the condition and the need for the condition? Not only can the court say it, but the court doesn't have to say every detail of why a condition is imposed. If there's enough in the record that's apparent why that condition is necessary, which was not the case in Salazar, but appears to be the case here. If there's enough in the record to warrant that condition, then there's case law that says we could find it, right? That we could affirm on that basis, no? It's not just is there enough, was it self-evident? Were the reasons for this conviction self-evident? It's more than just is there some evidence somewhere that this court can look at. And I just have to reiterate that even where there have been reasons, where the court has affirmed the condition, onerous conditions, they have only affirmed it in Browder where it was a third-party system that sent up a red flag of contraband to the PO, and the PO could only access it then. And in Koonst, it was the same thing. It was a third-party monitoring that only informed the government of suspicious behavior. It wasn't just the PO having full access to everything that he did, online, offline, everything. All right. Thank you. You've reserved some rebuttal time. Ms. McGrath, whenever you're ready. May it please the Court, my name is Tara McGrath, and I'm an Assistant United States Attorney in the Eastern District of New York. In sentencing the defendant for child pornography offenses committed online, the District Court did not abuse its discretion in imposing computer and internet monitoring. And I'll just pick up where Your Honors had been asking my counterparts some questions. Well, let me actually jump in, since I don't think I asked your counterpart any questions. I have some questions for you. The first is, I'm concerned about leaving out a requirement for reasonable suspicion for this. There have been certainly many cases we've had involving these types of search conditions, monitoring, what have you, and I could not come across anywhere the condition, one that lacked a requirement of reasonable suspicion. I mean, obviously there aren't, I shouldn't say obviously, there aren't a lot of published decisions on these types of things. But I'm concerned about the fact that this monitoring does not require reasonable suspicion and why that should not be a concern. And the fact that the District Judge didn't speak to that is my concern. Yes, Your Honor. So this Court has upheld monitoring conditions against child pornography defendants that do not require reasonable suspicion just for the monitoring element. That was in Rubel, in Sadocito, and in Browder. In Browder, the term by itself did not require reasonable suspicion. In practice... Did it include, though, language? I mean, I guess, I don't know if the absence of mentioning reasonable suspicion means we can assume it's not required. But, and I don't know how those particular conditions were worded. But I'm sorry, go ahead. With respect to Browder, in practice, probation used a third party to monitor the data, and that third party would then kick up notices to probation. But in Rubel, in discussing the suggestion that, you know, Browder now stands for the proposition that we need a third party, Rubel expressly rejected that. It explained that for Internet monitoring to be effective for this type of crime, someone, whether probation or a third party, needs to be able to review a large swath of data. And, of course, to be sufficiently tailored, these conditions need not use the least restrictive means. The remedy instead is that where extraneous information is collected, the person reviewing has to be conscientiously unaware of that. And we learned that from both Litschitz and Browder. Here, the court did give sound reasons for not requiring, you know, quote-unquote reasonable suspicion. The suggestion was the computer system will monitor, and then when there's a red flag, they'll kick it up. But the probation explained, and that's at the record at A155, that the system worked through keyword searches. And so if keywords were hit, that information would be- Right, but this is, the keywords, I mean, you know, the probation's explanation of how this works, everything seemed, you know, I felt like none of the sources are giving really precise information about how this works. And even what we have in the record about this keywords, this is still essentially, I assume, a probation officer sitting in front of the computer, they're punching in the keywords that are flagging this, as opposed to, you know, it's not sort of self-executing the keywords. It's still a probation officer who is making the choices and has access to everything, is the impression I got from the way that it's described. And maybe that's not correct, but- So at A155 over to 156, the description suggested that the probation officer would receive hits based on keywords, but they were entitled to review sources outside of the keywords. So just because something wasn't hit by a keyword didn't preclude them from reviewing it. And there, their searches were targeted typically towards areas that related to the offense conduct. The court found that sufficiently protective. It described that the suggestion that there be, you know, red flags would be unworkable here, where probation explained that its system, at least at that time, did not have the ability for the computer to monitor on its own. Well, isn't, I mean, part of the difficulty here, Ms. McGrath, is that, it seems to me, the court is trying to describe a condition that, in Mr. Pepeo's case, won't be applied for, you know, some five years within multiple years of supervised release, and no one is really sure what program or provider probation might be using at that time. And so everyone is kind of, I mean, my impression from the sentencing, everyone is kind of struggling to describe a condition with sufficient detail and clarity that, you know, none of us knows what computer program probation will be using or what third-party provider. And so, you know, we're left with this language that the court just describes it as the probation office's computer and internet management slash monitoring SIMP program, but it's not really clear to the court or to probation at the sentencing what exactly that will mean in, you know, the year 2030 or whenever it is that Mr. Pepeo is going to be subject to this condition. And what is the solution to that problem? Your Honor, in Lipschitz, the court did suggest in a footnote that perhaps where there are lengthy terms of incarceration, it would be best to impose the specifics of the term at the time a defendant begins supervised release, but they since walk that back as being unworkable and suggested instead that a more appropriate path may be to just impose the sentence at the time of sentencing. And, of course, either party is free to apply to the district court for a modification if that's determined to be appropriate. But this court has also recognized in Kuntz that a defendant's means of evading detection and technology are both fickle and evolving, and so there needs to be some degree of flexibility to allow for the application of these conditions. Why not have reasonable suspicion be the guiding framework for that? Because then we don't have to in five years when whatever is imposed, it has to meet the standard of reasonable suspicion. What is the harm of having that be part of the condition? With respect to the instant case, probation suggested that that would not work. The computer did not have the ability to monitor on its own. The specific facts of this case also suggest that that may have resulted in certain violations not being detected. So while the defendant was on supervised release, he was subject to continuous monitoring. That did not require reasonable suspicion. And that is how the violations at issue here were detected. So that the defendant maintained an unmonitored iPhone came to light because probation reviewing his email found an emailed receipt. There was no suggestion that there was reasonable suspicion that inspired that search. But in doing its typical review, it came across that email. Likewise, when the defendant had an unapproved visitor to its home, probation discovered that when viewing his text and saw communications between the two concerning that visit. Here, the defendant used techniques to evade detection. There's some dispute as between the parties as to his motives. But it's undisputed that his practice was to find images on the internet, to solicit them directly from children. And then once he had received them and self-gratified to delete the images, the videos, the chats, the applications. Did the district judge rely on that in imposing this? Is there anything in the record to suggest that this was the basis for the district court's imposition of these conditions? So the district court at this sentencing, there was a discussion of the term of imprisonment and then the conditions of release at defense counsel's request. In discussing the nature of the offense conduct and what the district court deemed to be the most aggravating, he relied on three aspects of the offense, all which were committed online. One related to- Right, but that was during the imposition of the sentence. And so as you described, there was sort of a, here's the sentencing. I've considered these factors, blah, blah, blah. This is what I'm imposing. And then after that, oh, well, can we talk a little bit about these conditions? And in that portion of the discussion where there was the back and forth with counsel and with the judge about the nature of these conditions and the terms and all of that, there was no mention by the district judge of the prior violations or of the factors that were discussed when he was imposing the sentence. Was there? He did not repeat himself no, but this all happened within the course of one sentencing and after a lengthy briefing and argument. Not just that he didn't repeat himself, he didn't say, for the same reasons that I imposed this sentence on you, I am also, that is also the reason why I think you need internet monitoring condition number eight, this is why condition number nine. There was nothing like that, was there? Your Honor, he referenced the nature of the offense conduct and the need to impose these conditions to prevent the defendant from engaging and returning to the offense conduct. And so it is fair that when he is referring to the offense conduct, there is no guesswork for anyone sitting in that courtroom. He was referring to the offense conduct he had just discussed several moments before and in particular what he viewed to be the most aggravating factors. The use of the internet to distribute child pornography online, to solicit child pornography directly from children and to use software to conceal his identity when viewing child pornography online. And are you referring to when the court said, given the use of a computer in this case to commit the crime, I think it's properly tailored to the offense conduct in this case, referring to the conditions that are being objected to? Yes, Your Honor. And so he referred to the tailoring of the condition to the conduct in the case. And you're saying that that encompasses what he said at sentencing when he was talking about the offense conduct at that same hearing? Yes, Your Honor. And also when he said, I find that each of these conditions is specifically tailored to the specific nature of the offense in this case. Can I ask you, have you come across, I don't know how long you've been doing this, but are you aware of any child pornography cases that did not involve the use of a computer? Have you seen that in case law? Have you handled those types of cases? I note that I am out of time, but may I answer your question? Yes, you may. I am not personally aware, no. And so obviously the point I'm getting at is, so the use of a computer is involved in essentially in every child pornography case. And so if the use of a computer is what justifies these kinds of conditions, then effectively they're always justified. Is that your position? No, Your Honor. Had the court simply said child pornography cases are often committed over the Internet, this is a child pornography case, so this condition is appropriate here, that would be a problem. The court did not do that. To the contrary, when probation suggested this is the type of condition ordered in all these cases, the court said that doesn't sway me at all, the fact that it has been done like this before. Instead it considered the specific facts of this case, this offense, and it also considered each of the alternatives proposed by defense counsel and concluded that those would not be workable in this situation. Unless Your Honors have any further questions for the government, we ask that the court affirm, and thank you for your time. All right. Thank you very much. Just a few points. In response to Judge Lee's question about whether every child porn case involves the computer, that's exactly what went on here. Even when the court was considering aggravating and mitigating factors and was deriving a prison sentence in this case, the probation officer told the government was asking for a 158-month sentence and arguing this case was somehow a worse case than usual, a lot because of this early episode with the iPhone two and a half years ago and also because of the fact that there were some minors in the chat rooms that the defendant was in and obtained porn from. But the probation department told the court repeatedly that this was the lowest level of this kind of case, that this offender, an offender like Pepeo, typically received the mandatory minimum. Can I just ask you, I'm sorry to pull you away from your point, but with regard to a monitoring program of some kind, I assume it's not your position that such a program couldn't be justified, and I guess I'm just wondering what does a condition look like that allows for monitoring and incorporates reasonable suspicion but does not require third-party monitoring? Is your position that that is essentially what is required to be appropriate or is there some other version of monitoring that you would find appropriate? Yes, what is required is the type that was imposed in Salazar, actually on Reman in April of this year after this court reversed that case, which has software that is programmed to refer to the probation officer when suspicious activity is detected. That's the same kind of program that was involved in Browder where this court affirmed partly, and pardon me, turned on the fact that this was a third-party system that only alerted the probation department when there was contraband found, and in Couste also. The probation department, it was a CIMP, this is the probation office program, that notified the probation officer of impermissible suspicious activity consistent with the computer monitoring policy. This goes on all the time. The idea that this is somehow difficult or can't be done, and the government doesn't really argue that in its brief because it's just not true. This goes on all the time. There is software that is programmed to detect impermissible and suspicious activity, and it alerts the probation officer, and that can form, when the probation officer assesses that, that can form reasonable suspicion. But isn't that exactly what the court imposed here, the CIMP program, where there's a monitoring program? No, that's not what the court imposed. Well, I'm reading the condition. It says the defendant shall cooperate with the United States Probation Officer's Computer and Internet Management Monitoring Program. So how is that not the same thing? Because there was no requirement of reasonable suspicion. But there doesn't have to be reasonable suspicion for the software monitoring. No, but there has to be reasonable suspicion for the monitoring, for the probation officer to access it. In this case, what's missing is that. Well, isn't the red flag that? When you use a third-party vendor, they're running the same exact program. This is what I was trying to get at earlier, to say it seems like the biggest concern your client has is that he doesn't like that it's probation administering the same program. He'd rather have a third party do it. But whether it's probation or a third party, a red flag goes up. Isn't that enough of a suspicion for the probation to look? But that's not what this is limited to. That's not what this is limited to. The Salazar condition does limit it to that. This does not. This just says the CIMP, whatever that is. The probation officer testified that it's not a red flag situation, that it's him using keystrokes. As Judge Lee reads it the same way I read it. Well, isn't that what the other – that's what all programs do. There are programs that are put in, and there are search words that are put in, and they search in files, including non-JPEG files, because people – well, literature suggests that people who possess child pornography may hide it in ways that they're not labeled as JPEG files or photo files, but they're labeled as Word documents or they're put in files that are called taxes or something like that. But it seems to me, from what I was reading, that it is exactly the same program. The only difference is that he wanted a third party vendor to run it versus probation and that the program goes through an entire computer with search words and looks for things that are suspicious and raises a red flag. What Pepeo asked for below was one thing, that there be inserted, as there was with geolocation monitoring, that for the probation officer to access the monitoring, the program that's monitoring, reasonable suspicion is required. That's what he asked for, and that's what the court's role is, is to set the legal standard for what probation then does with its program. Its program, from what the probation officer said, it was unclear what their program did or what they were capable of, but from reading the case law, it's clear that they are capable of setting up a software monitoring program that doesn't allow the probation officer to just sit there and look at it at will, as this condition does, but requires instead that the probation officer only access that program when there is reasonable suspicion. And that was inserted into this for the geolocation monitoring itself. It was not for all of the other data, and that's what we asked for. That's what we argue is wrong and not narrowly tailored and violates this court's case law. All right. Thank you very much. Thank you. We have your arguments. Thank you to both of you, and we will take the case under advisement. Okay.